IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| WIJAHAT RIYAZ, )<br>)<br>Plaintiff. )<br>)<br>v. )<br>)<br>JOHN E. POTTER, )<br>Postmaster General, )<br>)<br>Defendant. ) | Case No. 04-3153-CV-S-GAF |

### ORDER

Presently before the Court is a Motion for Summary Judgment filed by the Defendant, John E. Potter, Postmaster General of the United States Postal Service ("USPS"). (Doc. #23). The Plaintiff, Wijahat Riyaz ("Riyaz"), filed this action asserting claims for discrimination and retaliation when he was not selected for a position with USPS as a Postal Inspector. (Doc. #1). USPS asserts that Riyaz was not selected as a Postal Inspector because he failed to demonstrate the requisite level of competency in each of eight areas in which a candidate for Postal Inspector is evaluated. (Doc. #23). Therefore, USPS contends it is entitled to summary judgment on Riyaz's claim for discrimination based on national origin and race because Riyaz was not qualified to be a Postal Inspector. Id. USPS further argues that summary judgment on Riyaz's retaliation claim is warranted because the facts do not reveal that the Assessors at the Potomac, Maryland facility who denied Riyaz's application for employment as a Postal Inspector were aware of Riyaz's earlier filed EEOC complaint. Id. Upon careful consideration of the facts and arguments submitted by the parties, USPS's Motion for Summary Judgment is GRANTED.

1

**DISCUSSION**

**I.     Facts**

Riyaz's cause of action arises out of the USPS's decision not to hire him as a Postal Inspector. Riyaz began his employment with the USPS in June of 1994 as a full time Mail Processing Clerk at the Springfield, Missouri Post Office. (Doc. #23). Riyaz initially applied for a job as a Postal Inspector with the USPS's Postal Inspection Service ("Inspection Service") on July 16, 1996. (Docs. #23, #24, Ex. 1 at pgs. 3, 6). To qualify for the position of Postal Inspector, an individual must be a U.S. citizen between 21 and 37 years of age and meet all the following "General Requirements":

- A conferred, 4 year degree from an accredited college or university.
- Vision of 20/100 in each eye without glasses (Snellen), corrected to at least 20/30 in one eye and 20/40 in the other eye; and good color perception. Individuals who have undergone radial keratotomy (RK) are considered unsuitable for employment.
- Ability to hear at ordinary conversation levels from 15 feet, without a hearing aid.
- In good physical condition (weight proportional to height) and mental condition.
- No felony convictions.
- No misdemeanor conviction of domestic violence.
- A valid state driver's license for at least two years.
- Ability to demonstrate these attributes, as measured by the Assessment Center:
  — Write and speak English clearly.
  — Schedule and complete activities in a logical, timely sequence.
  — Comprehend and execute instructions written and spoken in English.
  — Think clearly and comprehend verbal and non-verbal information.
  — Interact with others to obtain or exchange information or services.
  — Perceive or identify relevant details and associate them with other facts.

(Doc. #24, Ex.2). Additionally, a candidate must satisfy at least one "Special Requirement." Id.

On his application, Riyaz listed being a native speaker of Hindi as his requisite special skill. Id. As Hindi was not among the languages the Inspection Service was considering a specialized skill at that time and because Riyaz failed to document any other specialized skill, his application was denied. Id.

2

On November 9, 1996, Riyaz submitted a second application listing "law enforcement expertise" as his special skill. (Docs. #23,#24, Ex. 1 at pg. 3). A review of Riyaz's work experience and background did not support his assertion. Id. Accordingly, Riyaz was informed that his application would not be processed further.

On April 1, 1998, the Inspection Service included Hindi among the languages sought as a special skill. (Docs. #23, #24, Ex. 1 at pg. 6). Riyaz was asked to submit another application which he did in June 1998. Id. On September 11, 1998, Riyaz took and passed his 620 entrance exam. Id. On December 8, 1998, Riyaz took and passed the oral proficiency test for Hindi. Id. On December 30, 1998, Riyaz took the required physical exam. Id. On January 5, 1999, the Inspection Service received the results of Riyaz's physical and learned that Riyaz did not meet the eyesight requirement. Id. On June 10, 1999, the Inspection Service sent Mr. Riyaz a letter stating that he was not qualified to be a Postal Inspector because he did not meet the eyesight requirement. Id. From July 1999 to August 2000, Riyaz made several requests for reconsideration and waiver of the physical requirements, but Riyaz was advised that the Inspection Service does not make exceptions to the physical requirements. (Docs. #23, 24, Ex. 1 at pgs. 3, 6; Doc. #23, Ex. 2 at ¶ 7).

On August 11, 2000, Riyaz sent the Inspection Service a letter stating that he had undergone Lasik surgery on August 3, 2003 to correct his vision deficiencies and requested reconsideration of his application. (Docs. #23, 24, Ex. 1 at pgs. 3, 6). On August 22, 2000, the Inspection Service received a fax from Riyaz's physician confirming the surgery and Riyaz's corrected vision. Id. On October 26, 2000, the Inspection Service informed Riyaz that he was being reconsidered for a position as a Postal Inspector. Id.

3

On December 14, 2000, Riyaz, along with other candidates, was brought to the Inspection Service Assessment Center in Potomac, Maryland. (Doc. #23, Ex. 3 at ¶ 9). The Assessment Center has six assessors divided into two groups of three. (Doc. #23, Ex. 2 at ¶ 6). The candidates, who are identified only by number, participate in certain exercises wherein the assessors evaluate the candidates' performance in the following eight competency areas: (1) written communication; (2) oral communication; (3) setting priorities; (4) following instructions; (5) interpreting information; (6) dealing with people; (7) decision making; and (8) extracting details. (Docs. #23, #24, Ex. 1 at pg. 3; Doc. #23, Ex. 4, ¶¶ 5-9; Doc. #23, Ex. 5, ¶¶ 5-7). Prior to their evaluations, the assessors determine the priority of each exercise. (Doc. #23, Ex. 2 at ¶ 6). They review each candidate's work individually and then come to a group consensus within the two separate groups. Id. The two group scores are brought together at the end of the exercise for a total value. Id.

The USPS offers the affidavits of two Postal Inspectors who participated in the assessment of Riyaz in support of their position that Riyaz failed to demonstrate the requisite competency during the assessment exercises. (Doc. #23 at ¶ 15 citing Ex. 4, 5). Beverly Carmichael[1] testifies that the first exercise involved watching a video, extracting details and writing a report. (Doc. #23, Ex. 4 at ¶ 6). The candidates were then assessed on their written communication skills, extracting information from a fact pattern, setting priorities, following instructions, interpreting information and making decisions. Id. Ms. Carmichael found Riyaz's performance on the first exercise "to be deficient in that the written report omitted important

---

[1] The assessors involved in the Assessment Center for December 14, 2000 (the date Riyaz was assessed) were: Michael Bazin, Beverly V. Carmichael, Debra A. Harris, John F. Longhrey, Sean F. Lynch and Robert E. Maes. (Doc. #24, Ex. 2 at ¶10).

4

information from the fact pattern, and it was poorly organized." (Doc. #23, Ex. 4 at ¶ 8). Ms. Carmichael states that Riyaz's foreign accent, race and national original did not factor into her assessment. (Doc. #23, Ex. 4 at ¶¶ 12-13). Ms. Carmichael further states that she was not aware during the assessment process that Riyaz had filed a previous EEOC complaint. (Doc. #23, Ex. 5 at ¶ 14).

The USPS also submitted the affidavit of a second assessor, Debra Ann Harris. (Doc. #23, Ex. 5). Ms. Harris stated in her affidavit that she testified regarding the "in-basket" exercise at the EEOC hearing in this matter. (Doc. #23, Ex. 5 at ¶ 6). During the in-basket exercise, Riyaz was given a set of instructions to follow. Id. He was given complaints, memos, and information and was directed to prioritize the information and address it in writing. Id. Ms. Harris attests that she reviewed Riyaz's work product and rated Riyaz "in the 2 range for most of the dimensions, with a score of 3 for extracting details." Id. Ms. Harris also testified at the EEOC hearing that she observed Riyaz's work product in the "witness interview" exercise. (Doc. #23, Ex. 5 at ¶ 7). Ms. Harris found that Riyaz's written work product "had a number of grammatical and spelling errors." Id. She further found that Riyaz "did not extract all the necessary information from the interview" and she observed that "during the interview itself there were questions that were not understood by the witness." Id. Overall, Ms. Harris characterized the interview as "somewhat antagonistic" and ultimately, Riyaz "did not identify a suitable course of action to follow up on the crime." Id. Ms. Harris states that Riyaz's foreign accent, race and national original did not factor into her assessment. (Doc. #23, Ex. 5 at ¶¶ 8-9). Ms. Harris further states that at the time of her assessment of Riyaz, she was not aware that Riyaz had filed an EEOC complaint. (Doc. #23, Ex. 5 at ¶ 9).

On December 15, 2000, Riyaz was informed that he was not being selected for a Postal Inspector position due to his below average performance in all eight competency areas. (Doc. #23, Ex. 6). Riyaz

was further advised that he could be re-evaluated after one year, however, by that time he would have surpassed the Inspection Service's age requirement which would preclude him from eligibility. Id.

Riyaz filed a formal complaint with the EEOC on May 8, 2001 asserting that the USPS discriminated against him on the bases of race, national origin and reprisal for prior protected activity. (Doc. #1, Ex. 3). The EEOC denied Riyaz's claim, prompting him to file the present action asserting claims for race and national origin discrimination and retaliation. Id. In his Opposition to this Motion, Riyaz contends that "the promotion practices of the USPS are manipulated, tainted, unfair and biased" as "people are promoted on the basis of favoritism and the outcome to job promotion is pre-determined." (Doc. #24). Riyaz asserts that he was qualified for the position of Postal Inspector at the time he applied because he has a Bachelor's degree, knowledge of foreign languages and was between the ages of 21 and 27. Id.

Kenneth R. Bond, II ("Bond"), who was employed by the Inspection Service as the Inspector in Charge of the Career Development Division from April 2000 until July 2001, submitted an investigative affidavit to the EEOC regarding the complaint Riyaz filed following the Inspection Service's decision not to hire him as a Postal Inspector. (Doc. #23, #24, Ex. 2). In his affidavit, Bond was asked the following question and testified as follows:

> **Discuss the element of language and communication skills in the position of Postal Inspector. How were Mr. Riyaz' oral and written communication skills? Was the fact that Mr. Riyaz is not a native speaker of English a problem? Are there other Postal Inspectors who are not native speakers of English? Did the team involved in the assessment process find complainant difficult to understand? Please indicate the concerns they expressed in their evaluations.**
>
> It is imperative that inspectors possess good oral and written communication skills to be successful. Mr. Riyaz demonstrated superior oral communication skills in his native language. However, not having English as a primary language is always a problem, Mr. Riyaz; would be included in that category. I am not certain if we have inspectors who are

6

> not native speakers of English. I don't know what difficulties the assessment team
> encountered when arriving at their final evaluations.

Id. Riyaz claims that this is "clear direct evidence of discrimination" against him. (Doc. #23). Bond submitted an affidavit in the present action stating that he did not participate in the assessment of candidates, including Riyaz, on December 14, 2000. (Doc. #23, Ex. 3).

Riyaz also asserts a retaliation claim in his complaint. (Doc. #1). In an attachment to the investigative affidavit Bond provided the EEOC, it is noted that on September 22, 2000, an e-mail message was received from Stanley Rose[2] stating that Riyaz had filed a complaint with the EEOC after he had been denied a position as a Postal Inspector because of his eyesight. (Doc. #24, Ex. 2). The attachment further states that on September 25, 2000, Ms. Weaver[3] faxed Stanley Rose a copy of Riyaz's letter requesting reconsideration after Riyaz had undergone Lasik eye surgery and the accompanying physician's documentation. Id. Riyaz contends that he faxed the letter requesting reconsideration of his application for employment and the accompanying physician's report on August 22, 2000. Id. Ms. Weaver did not respond to Riyaz's request for reconsideration by reinstating his application until September 26, 2000. Id.

---

[2]It is unclear from the record whether Stanley Rose was employed by the USPS and if so, in what capacity.

[3]The "Ms. Weaver" referred to in the attachment to Bond's affidavit is likely Eleanor Weaver who was the recruitment specialist assigned to Riyaz's application for employment. However, Bond states in his affidavit that Eleanor Weaver retired in December 1999 and when Riyaz's application was reactivated Nancy Thomas reviewed his application. (Doc. #24, Ex. 2 at ¶ 10). It is unclear from the record before the Court who initially received the e-mail from Stanley Rose and who responded to the e-mail by producing Riyaz's request for reconsideration and Riyaz's physician's statement that he had undergone Lasik eye surgery. However, the record is clear that neither Eleanor Weaver, Nancy Thomas nor Bond were involved in the assessment of Riyaz on December 14, 2000. Id.

7

Riyaz argues that the delayed reinstatement of his employment application, until after Ms. Weaver was notified of Riyaz's EEOC complaint, constitutes discriminatory retaliation. Id.

The USPS has filed this Motion for Summary Judgment arguing that Riyaz has failed to satisfy his burden of establishing a prima facie case of discrimination on the bases of race and national origin because he has failed to prove that he was qualified for the position of Postal Inspector. (Doc. #23). The USPS contends that Riyaz was not qualified for the position of Postal Inspector because he failed to demonstrate the requisite competency in each of the eight competency areas assessed by the Inspection Service. Id. Furthermore, Riyaz's failing assessment scores constitute a legitimate nondiscriminatory reason for not selecting Riyaz as a Postal Inspector. Id. With respect to Riyaz's retaliation claim, the USPS asserts that it is entitled to summary judgment because Riyaz has failed to prove that the Assessors at the Potomac, Maryland Assessment Center had any knowledge prior to Riyaz's non-selection that he had filed an EEOC complaint. Id.

Riyaz fails to specifically address each material fact asserted by the USPS. However, the bulk of the facts asserted by the USPS are derived from the investigative affidavit Bond submitted to the EEOC, which Riyaz also attached to his Opposition. (Doc. #23, #24, Ex. 2). Accordingly, the Court considers these facts to be undisputed by the parties. Riyaz submitted some additional facts, supported by the affidavits of his co-workers, to prove that the USPS's promotion practices are "manipulated, tainted, unfair and biased." (Doc. #24). The co-workers' testimony relates to the USPS's promotion practices in Springfield, Missouri and North Hollywood, California. (Doc. #24, Ex. 5, 6). Riyaz presents no legal authority or argument in support of his position that he was qualified for the position of Postal Inspector and the USPS's proffered reason for refusing to hire him is pretext for discrimination.

8

**II.     Standard**

The USPS filed this Motion for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. According to this Rule, summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering this Motion, the Court views all facts in the light most favorable to Riyaz and gives him the benefit of all reasonable inferences. *See* Prudential Ins. Co. v. Hinkel, 121 F.3d 364, 366 (8th Cir. 1997). The Court will not weigh the credibility of the evidence, but rather will focus on whether a genuine issue of material fact exists for trial. Roberts v. Browning, 610 F.2d 528, 531 (8th Cir. 1979); United States v. Porter, 581 F.2d 698, 703 (8th Cir. 1978).

The USPS bears the burden of proving the absence of disputed material facts. *See* Prudential Ins. Co., 121 F.3d at 366. The burden then shifts to Riyaz to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If Riyaz fails to establish a factual dispute on an essential element of her case, the Court will proceed to determine whether Wells Fargo is entitled to judgment as a matter of law. *See* E.E.O.C. v. Woodbridge Corp., 263 F.3d 812, 814 (8th Cir. 2001).

The summary judgment rule is intended "to isolate and dispose of factually unsupported claims" and should be applied to accomplish this purpose. Prudential Ins. Co., 121 F.3d at 366. In the interest of promoting judicial economy, summary judgment should be granted to prevent the trial of cases lacking a genuine issue of material fact. Inland Oil and Transp. Co. v. U.S., 600 F.2d 725, 728 (8th Cir. 1979).

**III.    Analysis**

As a preliminary matter, the Court finds that Riyaz has failed to set forth specific facts showing that a genuine issue of material fact exists for trial. In deciding this Motion for Summary Judgment, the Court has focused on the facts set forth in the investigative affidavit Bond submitted to the EEOC. Both Riyaz and the USPS derive the material facts germane to the present action from this affidavit and neither party contests these facts. Although Riyaz attempts to set forth additional facts, supported by the affidavits of his co-workers, this Court does not find that the promotion practices of the USPS in Springfield, Missouri and North Hollywood, California are relevant to the decision of the Assessors in Potomac, Maryland to not hire Riyaz as a Postal Inspector. As Riyaz has failed to prove that a factual dispute exists on an essential element on either his discrimination or retaliation claims, the Court proceeds to determine whether the USPS is entitled to judgment as a matter of law.

### A.     *Discrimination Based on National Origin and Race*

A plaintiff in a discrimination case can survive summary judgment in one of two ways: (1) by producing direct evidence of discrimination; or (2) by "creating the requisite inference of unlawful discrimination" through the McDonnell Douglas three-step burden shifting analysis. Russell v. Kansas City, Missouri, 414 F.3d 863, 866-67 (8th Cir. 2005).

#### 1.     *Direct Evidence of Discrimination*

Riyaz asserts that summary judgment should be denied because he has produced direct evidence of discrimination. When questioned about Riyaz's written and oral communication skills and the fact that Riyaz was not a "native speaker of English," Bond responded: "[N]ot having English as a primary language is always a problem, Mr. Riyaz would be included in that category." Riyaz asserts that this is "clear and direct evidence of discrimination."

10

The USPS contends that this is not direct evidence of discrimination because Bond was not involved in the decision not to hire Riyaz. To survive summary judgment by presenting direct evidence of discrimination, Riyaz must present "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision." Rivers-Frison v. Southeast Missouri Community Treatment Center, 133 F.3d 616, 619 (8th Cir. 1998) *quoting* Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993). "Conduct or statements by persons involved in making the employment decision directly manifesting a discriminatory attitude, of a sufficient quantum and gravity that would allow the factfinder to conclude that attitude more than likely not was a motivating factor in the employment decision" constitutes sufficient direct evidence of discrimination to survive summary judgment. Erickson v. Farmland Indus., Inc., 271 F/3d 718, 724 (8th Cir. 2001).

Bond was not Riyaz's manager or supervisor. Bond was the Inspector in Charge of the Career Development Division which oversees the application process for people seeking positions as Postal Inspectors. Although Bond was responsible for overseeing the application process, Bond did not participate in the assessment of Riyaz at the Inspection Service Assessment Center in Potomac, Maryland where it was determined that Riyaz lacked the requisite competency for a Postal Inspector position. As Bond did not participate in the decision not to hire Riyaz, his statements do not establish that the decision not to hire Riyaz was motivated by some discriminatory animus. Accordingly, Riyaz has failed to present direct evidence of discrimination sufficient to survive summary judgment.

2. *McDonnell Douglas* Burden Shifting Analysis

11

In the absence of direct evidence of discrimination, Riyaz can survive summary judgment by creating the requisite inference of unlawful discrimination through the McDonnell Douglas three-step burden-shifting analysis. . Russell, 414 F.3d 866-67. A cause of action for discrimination in violation of 42 U.S.C. § 2000e(5) ("Title VII") is subject to the three stage burden-shifting analysis articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). In the first stage of the McDonnell Douglas analysis, Riyaz bears the burden of establishing a prima facie case of discrimination. *See* McDonnell Douglas, 411 U.S. at 802. To establish a prima facie case of unlawful race or national origin discrimination, Riyaz must demonstrate that (1) he is a member of a protected class; (2) he has applied and was qualified for an open position; (3) he was rejected; and (4) members of other racial or national origin groups filled the position. *See* Id.; *See also* Chock v. Northwest Airlines, 113 F.3d 861, 863 (8th Cir. 1997).

Here, the USPS argues that Riyaz has failed to establish a prima facie case of discrimination because he cannot prove that he was qualified for the Postal Inspector position. The USPS contends that Riyaz was not qualified to be a Postal Inspector because he failed to demonstrate the requisite level of competency in each one of the eight areas measured by the Assessment Center. Two of the Assessors who observed Riyaz at the Assessment Center found his competency insufficient for the position of Postal Inspector. Ms. Carmichael found Riyaz's performance on the first exercise to be deficient in that the written report Riyaz produced omitted important information from the fact pattern, and it was poorly organized. During the "witness interview" exercise, Ms. Harris noted that Riyaz's written work product had a number of grammatical and spelling errors. Ms. Harris further found that Riyaz failed to extract all the necessary information from the interview and she observed that during the interview there were

12

questions that the witness did not understand. Overall, Ms. Harris characterized the interview as "somewhat antagonistic" and, ultimately, Riyaz failed to identify a suitable course of action to follow up on the crime. Riyaz has not produced any evidence to establish that he demonstrated the requisite competency in the eight assessed areas and, therefore, was qualified for the position of Postal Inspector. Accordingly, Riyaz has failed to establish a prima facie case of discrimination because he has failed to prove that he was qualified to be a Postal Inspector.

Not only does Riyaz's failing performance in the eight competency area evaluated establish that he was not qualified to be a Postal Inspector, thereby negating his prima facie case of discrimination, it is also evidence of the Inspection Service's legitimate, nondiscriminatory reason for not hiring Riyaz as a Postal Inspector. Riyaz has not produced any evidence demonstrating that the Assessor's conclusion that he was not competent was pretext for discrimination. Therefore, Riyaz's claim for discrimination based on national origin and race also fails because Riyaz has failed to prove that the Inspection Service's proffered reason for refusing to hire him is pretext for discrimination.

### B.     *Retaliation*

Riyaz claims that his re-application for the Postal Inspector position following his Lasik eye surgery was only considered by the Inspection Service after Ms. Weaver learned that Riyaz had filed a complaint with the EEOC and, therefore, the outcome of the assessment process was pre-determined at this point. To establish a prima facie case of Title VII retaliation, Riyaz must show that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action. *See* Shanklin v. Fitzgerald, 397 F.3d 596, 603-04 (8th Cir. 2005). If Riyaz establishes a prima facie case of Title VII retaliation, the USPS may rebut Riyaz's

13

prima face case "by advancing a legitimate, non-retaliatory reason" for the adverse action it took against Riyaz. *See* Rheineck v. Hutchinson Tech., Inc., 261 F.3d 751, 757 (8th Cir. 2001). If the USPS makes this showing, Riyaz must demonstrate that the USPS's proffered reason was pretext for illegal retaliation. Id.

Riyaz alleges that the outcome of the assessment process was "pre-determined" from the time Ms. Weaver learned that he had filed a complaint with the EEOC. However, Riyaz fails to offer any evidence that the Assessors at the Potomac, Maryland facility were aware that he had filed a complaint with the EEOC. Ms. Carmichael stated that she was not aware during the assessment process that Riyaz had previously filed an EEOC complaint. Ms. Harris similarly testified that at the time of her assessment of Riyaz, she was not aware of Riyaz's previously filed EEOC complaint. As there is no evidence that the Assessors who made the decision that Riyaz was not sufficiently competent for a Postal Inspector position were aware of Riyaz's EEOC complaint, Riyaz has failed to prove the requisite causal connection between his EEOC complaint and the Assessor's decision not to hire him based on his lack of competency. Accordingly, Riyaz has failed to prove his claim for discriminatory retaliation.

## **CONCLUSION**

Riyaz was not selected for a position as a Postal Inspector because he failed to demonstrate the requisite level of competency in each of eight areas in which a candidate for Postal Inspector is evaluated. Therefore, Riyaz has failed to establish a prima facie claim of discrimination based on national origin and race because he was not qualified to be a Postal Inspector. Furthermore, the USPS has articulated a legitimate, non-discriminatory reason for not hiring Riyaz. Additionally, Riyaz's discriminatory retaliation claim fails because Riyaz has failed to prove that any of the Assessors who ultimately determined he was

not competent were aware of his EEOC filing.  Based on the foregoing analysis, the USPS's Motion for

Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

                                               /s/ Gary A. Fenner
                                               GARY A. FENNER, JUDGE
                                                United States District Court

DATED:   **December 12, 2005**